## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DEMARKO BROWN, on behalf of himself and
other similarly situated individuals,

          Plaintiffs,

v.

G4S SECURE SOLUTIONS (USA) INC.,
RENAISSANCE CENTER MANAGEMENT
COMPANY, GENERAL MOTORS, LLC. f/k/a
GENERAL MOTORS COMPANY, MARRIOT
INTERNATIONAL, INC./DETROIT HOTEL
SERVICES, LLC, d/b/a DETROIT MARRIOTT
RENAISSANCE CENTER, GREGORY JENKINS,
LARRY PAYNE, JOHN DOES #1, 2, 3, 4, 5 AND 6

          Jointly and severally,

          Defendants.

Case No:

HON.

---

DANIELLE B. SAFRAN (P61965)
THE SIGLER LAW FIRM, PLC.
30300 Northwestern Hwy., Suite 337
Farmington Hills, MI 48334
(248) 705-6400
safranlaw1@gmail.com
*Attorney for Plaintiffs*

## COMPLAINT AND JURY DEMAND

NOW COME Plaintiffs, Demarko Brown, by and through their attorneys, The

Sigler Law Firm, PLC., and submits Plaintiffs' Complaint as follows:

This case arises out of an assault and battery, and illegal arrest and false

imprisonment of Plaintiff by G4S, with the knowledge, consent and ratification of

1

Marriott while Plaintiff was a guest in Detroit Marriott Renaissance Center Hotel.

## JURISDICTION AND VENUE

1.      At all relevant times, Plaintiff, Demarko Brown, ("BROWN"), was domiciled in the City of Detroit, County of Wayne, in the State of Michigan.

2.      At all relevant times, Defendant Marriott International, Inc.,/Detroit Hotel Services, LLC., a Delaware corporation, ("MARRIOTT"), was doing business under the assumed name Detroit/Marriott, Renaissance Center in the city of Detroit, Wayne County, Michigan.

3.      At all relevant times, Defendant, G4S SECURE SOLUTIONS (USA) INC., ("G4S") was a foreign, Florida corporation registered in the State of Michigan that conducts a regular and systematic portion of its business in Wayne County, State of Michigan; the Defendant has its principal place of business in the state of Florida.

4.      At all relevant times, Defendant, RENAISSANCE CENTER MANAGEMENT COMPANY, ("RCMC") was a domestic profit corporation registered in the State of Michigan that conducts a regular and systematic portion of its business in Wayne County, Michigan.

5.      At all relevant times, Defendant, GENERAL MOTORS, LLC., ("GM") was a foreign corporation registered in the State of Delaware that conducts a regular and systematic portion of its business in Wayne County, Michigan.

6.     At all relevant times, Defendant Larry Payne, worked in the City of Detroit, Wayne County and resided in the State of Michigan.

7.     Defendants John Does 1-6 full names and residency are unknown at this time; such will be made known through discovery at a later date.

8.     The underlying torts occurred in the City of Detroit, Wayne County in the State of Michigan.

9.     Jurisdiction is proper in this Court pursuant to U.S.C §28.1331 and §1343.

10.    The citizenship of the parties in this matter are diverse.

11.    The amount in controversy exceeds the sum of $75,000, exclusive of costs, interest, and attorney fees and this matter is otherwise within the jurisdiction of this Court.

12.    Venue is proper in this Judicial District under U.S.C. §28.1391(b).

## CLASS CERTIFICATION

13.     Plaintiff reasserts and incorporates by reference paragraphs 1 through 12 of this Complaint as though fully stated herein.

14.    Plaintiff, a black male, brings this Complaint on behalf of himself and on behalf of other similarly situated, black Detroit Marriott Renaissance Center Hotel guests and visitors to the Renaissance Center building in Detroit, Michigan who have been injured as a result of similar acts, misconduct and negligence by

Defendants which interfered and/or violated Guests' constitutional rights from January 2019 to present. (hereinafter "Guests")

15.    On numerous occasions from 2019 to present, Defendants' employees reported complaints to Defendants' management detailing their experiences with several white Renaissance Center Security officers, including but not limited to Defendants John Does #1-6, that acted in overly aggressive and provoking fashion towards black Guests; instead of deescalating situations; excessive force was often used including physically attacking and piling on Guests who did not commit any crimes, display resistance and/or pose a threat and/or used force against Guests who were complying with the officers' verbal directives. These Officers actions constitute a violation of company policy, state law and the Fourth Amendment rights of Guests.

16.    Defendants white officers and management personnel have a pattern, practice and history of profiling, harassing, annoying, threatening, provoking, injuring and discriminating against black Guests at the Renaissance Center, ostensibly for entertainment purposes, which has resulted in serious physical and emotional injures to numerous black Guests.

17.    Defendants' management condoned and continues to condone the acts of their employees and refused to investigate complaints of racial biased Officers' acts of discrimination, racial profiling, wrongful arrest, unwarranted use of force,

excessive use of force, and false arrest on the premises of the Renaissance Center.

18.     Defendants GM, G4S and RCMC destroyed records, documents and video surveillance footage relative to incidents of racially motivated use of unwarranted and excessive use of force against Guests at the Renaissance Center; thus, such Guests name and contact information are unable to be identified at this time.

19.     There are numerous such Guests whose claims are substantially similar to those presented through Plaintiff's individual allegations; thus, Plaintiff requests that a class be certified based on the allegations set forth herein.

**GENERAL ALLEGATIONS**

20.     Plaintiff reasserts and incorporates by reference paragraphs 1 through 19 of this Complaint as though fully stated herein.

21.     Upon information and belief, Marriott, RCMC and G4S operated the Renaissance Center Hotel on behalf of the owner, GM, at all relevant time periods.

22.     Upon information and belief, during the relevant time period, GM directly hired and retained RCMC, of which GM is/was a partial owner, and G4S to handle all "security" functions for the hotel.

23.     Upon information and belief, the relevant employees of Defendants' RCMC, G4S, and/or GM, including but not limited to John Does #1-6 were "licensed private security police" pursuant to MCL §338.1079, the Private Security Business

and Security Alarm Act 330 of 1968 ("PA 330").

24.   Upon information and belief, Defendant Gregory Jenkins, GM executive is the PA330 License Holder for Defendant RCMC and, as such, he is responsible for hiring, training and supervising all licensed security police officers that provide security services at the Renaissance Center building in Detroit, Michigan (hereinafter "Renaissance Center: Security" or "RCS"), including but not limited to John Does 1-6, for all relevant time periods.

25.   Defendant Jenkins, RCMC and/or GM licensee, is and was at all times during the employment is accountable and responsible for the conduct of each person so employed, including John Does #1-6 and all other private security police officers working under the PA330 license at the Renaissance Center. *MCL338.1067*

26.   All PA330 certified Security Police have authority to make misdemeanor arrests in the State of Michigan while on the property of an employer that is licensed through the State of Michigan; security police officers must adhere to the same rules, regulations, laws, and constitutional guidelines as that of state police officers relative to search, seizure, arrest, and detainment of individuals. *MCL §338.1079*

27.   Defendant Jenkins was responsible for conducting investigations into complaints related to excessive/unwarranted use of force based on race and/or reports of racial profiling, biases, wrongful arrest and/or assault filed against any

6

security police officer working at the Renaissance Center building in Detroit, Michigan for all relevant time periods.

28.    Payne had authority to issue disciplinary action to any security police officer, supervisor, and/or management personnel working for Defendants at RCS for all relevant time period.

29.    Defendant Gregory Jenkins had the authority and discretion to ban a RCS officer and/or supervisor from working on the Renaissance Center building premises if they posed a safety concern to visitors.

30.    Upon information and belief, Defendant Larry Payne, was employed by Defendants RCMC, G4S, and/or GM, as the Security Operations Specialist/Security Director; Payne was in charge of hiring, training, supervising and disciplining all Renaissance Center Security ("RCS") officers for all relevant time periods.

31.    Upon information and belief, the security officers and private security police officers providing security services at the Renaissance Center building in Detroit, Michigan are collectively referred to as RCS but are employed jointly by the following Defendant companies: RCMC, G4S and GM.

32.    Defendants Jenkins and Payne were, for all relevant time periods, responsible for conducting any investigations related to use of force and/or reports of racial profiling, biases, discrimination and harassment filed against Defendants'

security police officers; only Payne and Jenkins had authority to issue disciplinary action to RCS Officers or supervisors, if warranted.

33.    Defendants RCMC and G4S are corporations that provided security services at the Renaissance Center building and whom negligently hired, employed, supervised, and failed to train Security Police Officers working at the Renaissance Center building which resulted in injury to the Plaintiff and other similarly situated individuals, including but not limited to violations of Constitutional Fourth Amendment rights.

34.    Upon information and belief, Defendant GM owns the Renaissance Center building in Detroit, Michigan and negligently hired, trained, supervised, retained and/or employed Defendants RCMC, G4S and/or Defendants John Does 1-6, Larry Payne and Gregory Jenkins.

35.    Defendant Marriott operates and maintains the Detroit Marriott Renaissance Center Hotel in Detroit, Michigan and negligently hired, trained, supervised, retained and/or employed Defendants RCMC and G4S.

36.    Defendants Marriott and GM were aware of several lawsuits brought against Defendants' officers which alleged racial biases, profiling, assault, use of unwarranted and excessive force during false arrests and harassment of visitors to the Renaissance Center and the Detroit Marriott Renaissance Center Hotel l from 2017 to present; yet continued to utilize said

security companies to provide security services in their workplace despite the historical complaints and incidents of race discrimination and race based violations of their Guests' constitutional rights.

37.    Defendants G4S, GM, and RCMC are, and were at all relevant times, aware of several lawsuits brought against RCS officers which alleged racial biases, profiling, assault, use of unwarranted and excessive force during false arrests and harassment of visitors to the Renaissance Center and the Marriott Hotel located in the Renaissance Center from 2017 to present; yet continued to maintain the employment of such employees.

38.    Defendants G4S, GM, and RCMC are, and were at all relevant times, aware of many white RCS officers' historical acts of racism, racial biases, racial epithets in the workplace, acts of discrimination against black individuals, racially motivated profiling, false arrests, violence against black individuals and intentionally violating the constitutional rights of others; yet continued to maintain the employment of such employees.

39.    At all times relevant herein, Defendants John Does #1-6, Payne and Jenkins were agents of Defendants.

40.    Defendants are vicariously liable for the acts of their private security police officers and employees, including but not limited to John Does #1-6, Jenkins, and Payne under respondeat superior.

41.    Defendants John Doe #1-6, Payne and Jenkins are liable individually for their wrongful acts set forth herein.

42.    Upon information and belief, Plaintiff was targeted and profiled based on his race by RCS officers, agents of Defendants, whom were negligently hired, supervised, employed and/or trained by Defendants.

43.    Caucasian Defendants, John Does 1-6, instigated and provoked a confrontation with Plaintiffs because of his race.

44.    On or about October 7, 2020, Plaintiff Brown, an African American male, was a guest staying at the Marriott Detroit Renaissance Center Hotel to celebrate his birthday with Erika Davis.

45.    At approximately midnight, more than ten hours after check-in, Plaintiff Brown left the hotel to the Defendants' parking lot in order to retrieve his birthday cake and food from Erika Davis' vehicle.

46.    Since he was merely running out to his car for a minute, Plaintiff only took his room key and wallet with him.

47.    On the way out of the hotel, Plaintiff passed several Marriott Hotel employees and security officers; none of which stopped him for any reason or inquired about wearing a mask while in the hotel.

48.     After retrieving his birthday cake, folding knife (to cut the cake) and carry out containers from his car, Plaintiff proceeded to go back into the Marriott Hotel and up to his hotel room.

49.     As Plaintiff approached the entrance to the Marriott Hotel, Defendants' John Does 1-6, approached Plaintiff and informed him that he was required to wear a mask in order to enter the building; these officers were wearing uniforms that looked like that of police officers but they did not identify themselves in any manner (employers or position) at the time.

50.     Plaintiff informed Defendants' officers that he was a guest of the hotel and just came from the hotel a minute before without wearing a mask.

51.     Despite checking into the hotel several hours earlier, Plaintiff was never previously asked to wear a mask by anyone and was never notified as to any mandatory mask policy in force during his stay at Defendant Marriott Hotel; thus he was confused with the officers' request.

52.     Plaintiff immediately informed Defendants' officers that he did not have access to a mask without being permitted into his hotel room as he did not have one in his possession and did not have a cellphone on him to call anyone to bring one to him; thus, Plaintiff asked whether the officers could simply provide him with a mask to wear so he could go back to his room where his girlfriend, Erika Davis, was waiting for him.

53.     Defendants' officers informed Plaintiff that it is not their job to provide him with a mask and prohibited him from entering the hotel where he was a paying guest.

54.     Defendants John Does 1-6 quickly became were very hostile and aggressive towards Plaintiff.

55.     Due to the officers' hostile and inflexible posture, Plaintiff walked away to sit on the curb outside of the hotel where he was calmly sitting down by himself and thinking about how he could obtain a mask at this late hour in order to get back up to his hotel room.

56.     Unbeknownst to Plaintiff, when he walked away, a black Security Police Officer, Michael Young, informed the supervisor at the scene, John Doe #6, that he would go into the building to retrieve a mask for Plaintiff in order to deescalate and resolve the situation.

57.     However, none of Defendants' officers ever informed Plaintiff that they would be providing him with a mask in just a few minutes; to the contrary, they specifically refused to do so and stated "it is not our job to get you a mask" and refused entry without a mask.

58.     While Plaintiff was sitting down on the curb near the circle drive of the Marriott Hotel, several of Defendants' white security police officers approached and surrounded Plaintiff with an aggressive posture in attempt to provoke hostilities;

Plaintiff was intimidated by these officers' actions, voiced his fear for his physical safety and stood up so the officers were not hovering over him.

59.    Plaintiff inquired as to why so many officers were surrounding him if this was only about a mask and stated "why is it that none of you look like me," referring to his African American race.

60.    Plaintiff reiterated to the white officers that their actions were causing him to fear for his life and said he could not understand why they would not just provide him with a mask so he could go in and enjoy his birthday with his girlfriend who was waiting for him in their hotel room.

61.    Neither the Officers (John Does 1-5) nor the supervisor at the scene (John Doe #6) informed Plaintiff that a mask would be forthcoming shortly and instead increased tensions and provoked Plaintiff by utilizing force against him.

62.    Without issuing any verbal directives, one of the white Security Police Officers, John Doe #1, shoved Plaintiff twice, escalating the situation by utilizing unwarranted force, as opposed to deescalating the situation which is required under the Use of Force protocols required by the Michigan State Police under PA330.

63.    Plaintiff did not shove the officer in return; instead, Plaintiff backed away from the Officers while continuing to engage in a conversation in an attempt to resolve this situation.

64.    Plaintiff noticed white individuals walking into the hotel without masks during this time; these individuals were not prevented from entering the hotel by any of Defendants' employees and told Defendants' Security Police Officers that they were treating him unfairly based on his race.

65.    Plaintiff's arms were down by his side and he was not threatening or posturing in any aggressive or violent manner.

66.    Plaintiff then asked Defendants' Officers whether this was a "black lives matter" situation, referring to a movement formed to campaign against systemic racism and violence against black people including racial profiling, assault and excessive use of force used by Caucasian police officers against black civilians which resulted in the recent May 25, 2020 death of George Floyd, among many others.

67.    Once Plaintiff voiced his fears that the Officers would become violent based on harbored racial biases,  Defendant John Doe #1 blindsided Plaintiff, tackling him forcibly into the concrete from the side without warning, provocation, rationale or prior verbal directive.

68.    Once Plaintiff hit the ground, Defendant John Does #2, 3, 4, and 5, four other officers employed by Defendants pinned Plaintiffs' extremities to the ground with the full combined weight of their bodies on Plaintiff and used various compliance controls and physical controls, including the utilization of painful

mandibular angle pressure points on both Plaintiff's right and left side, take down, including body slamming Plaintiff causing his face to smash into the concrete.

69.     John Does 1-5 inflicted deadly force on the Plaintiff as defined by the Defendants' use of force policies, procedures and handbooks.

70.     Plaintiff has a slender build, weighing less than 140 lbs. at the time of the incident; John Does 1-6 are all hefty, large males that towered above Plaintiff and easily overpowered him.

71.     Plaintiff did not pose any physical threat to these officers at any time.

72.     Plaintiff did not display any resistance, did not refuse to comply with John Does' verbal directives, and did not otherwise pose any threat to the security police officers.

73.     While Plaintiff was already restrained by Defendants' Security Police Officers, they continued to wrestle, assault and abuse him, including body slamming Plaintiff's head into the concrete, face first, causing extensive injuries to Plaintiff's body and brain.

74.     Five of Defendants' Caucasian Security Police Officers and one supervisor, John Does 1-6, were involved in the wrongful arrest of the Plaintiff; Defendants' employees used excessive and unwarranted force in doing so.

75.     Plaintiff did not display any acts of resistance prior to his arrest by Defendants.

76.     Plaintiff did not refuse to comply with any verbal directives given by the officers and was not asked to leave the premises at any time.

77.     At this time, the Officer returned with a mask for Plaintiff only to see him face down on the ground with four large Officers sitting and kneeling on him.

78.     Once Plaintiff was handcuffed, Defendants' Security Police Officers escorted Plaintiff into and through the hotel and common areas of the Renaissance Center building without a mask; John Does 1-6 did not offer or provide Plaintiff with a mask before bringing him into the building.

79.     Five of Defendants' Caucasian Security Police Officers, John Does 1-5 forcefully dragged and shoved Plaintiff into the hotel entrance door wall breaking the glass with Plaintiff's body, resulting in severe bruising, scratches, cuts, abrasions, contusion and loss of skin in several places.

80.     Plaintiff was disoriented, confused and had difficulty comprehending why he was being attacked and arrested and informed Defendants' employees such several times without response.

81.     State law and company policy requires the officers to contact EMS immediately upon injury to someone's head, neck or clavicle; the injured person's refusal is not a consideration as "there exists a reasonable risk of internal injuries that may not be manifesting visibly."

82.     Defendants were required to provide emergency medical services to evaluate and/or to transport Plaintiff to the nearest medical facility as force was used as a control measure by the Security Police Officers and Plaintiff suffered serious injuries to his body and head; however, no such services were provided.

83.     Any force utilized during an arrest which injures someone's head, neck or clavicle is considered deadly force, per state law and Defendants' company policies and such must be investigated by the Security Operations Specialist, Defendant Larry Payne.

84.     Plaintiff's head, brain, and neck (among other body parts,) were injured by Defendants' use of force, including Plaintiff's head being slammed into the concrete ground, face first by the Officers; thus, Defendants John Does 1-4 used deadly force on Plaintiff which resulted in serious injuries.

85.     Despite the force used by Defendants, no investigation was conducted by Defendant Payne or any other Defendants' personnel into this incident.

86.     While he was in custody in Defendants' holding cell for over four hours, Brown repeatedly requested to use a toilet; the Supervisor on duty who was present at the scene of the incident, John Doe #6, denied Plaintiff's reasonable request and Plaintiff was forced to urinate on himself.

87.     Plaintiff asked Defendant John Doe #6 to provide a black officer for him to discuss his matter with; Defendant denied his request.

17

88.     Plaintiff told Defendants' Supervisor, John Doe #6, that they were treating him "less than human" and asked him to call the "real police;" the supervisor responded, "we are the real police."

89.     Defendants' employees wrongfully held themselves out as licensed police officers in violation of state law.

90.     Hours later, Plaintiff was informed he was arrested for trespassing whereupon Plaintiff reminded the officers that he was a paid guest of the Marriott Hotel.

91.     Defendants indicated via written incident report that Plaintiff was arrested for "resisting an officer in discharge of duty." *MCL §750.479*

92.     An unidentified Marriott supervisor and G4S/RCMC supervisor (John Doe #6) witnessed these events without taking any actions to deescalate or address the situation.

93.     Defendants John Does 1-6 reported that they tackled and detained Plaintiff in order to enforce Marriott's mandatory mask rules on the hotel property; however, no such policy existed at this time.

94.     At approximately 5am, two uniformed Detroit Police officers arrived at the Renaissance Center building and ordered Plaintiff's jailers to release him immediately.

95.     The two Detroit Police officers drove Plaintiff straight home.

96.    The Detroit Police officers informed Plaintiff that no charges were being brought against him but he would be arrested if he returned to the Marriott Hotel that night; despite being a guest of the hotel and having his girlfriend and personal belongings still in his hotel room.

97.    Plaintiff reported to Detroit Police officers that Defendants' officers committed falsely imprisoned and arrested him utilizing unwarranted and excessive use of force; that the officers were "racist" and biased against him based on his race; the DPD officer replied that he should "hire an attorney then."

98.    Plaintiff was falsely imprisoned by Defendants GM, G4S and RCMC in a detention cell located in the basement of the Renaissance Center for approximately five hours.

99.    Defendants John Does 1-6 should have been criminally prosecuted for their false arrest and unwarranted use of excessive, deadly force on Plaintiff; however, Defendants' management personnel concealed such acts by destroying evidence, records and reports related to his arrest and detention, by not entering such information in the log book and by not filing the required AIMs report.

100.    The officers that detained, assaulted, falsely arrested and falsely-imprisoned Plaintiff were well aware that Plaintiff was NOT required to wear a mask in order to enter the Marriott Renaissance Hotel via the Circle Drive on October 7, 2020; such was merely a pretext for discrimination.

101.   Prior to this incident, GM clearly notified all Defendant RCMC and G4S' officers and management personnel in writing that the Marriott Hotel did not require their hotel guests to wear a mask while in their space.

102.   Pursuant to Marriott's mask policy in force at that time, Marriott Hotel guests were not required to wear a mask while in Marriott's space; GM's policy required that the Officer(s) merely instruct any hotel guest that comes in through the hotel doors without a mask to stay in the hotel space within the Renaissance Center only as masks were required in the common spaces of the Renaissance Center building.

103.   Defendants John Does #1-6 were aware there was no mandatory mask policy for Marriott Guests at this time but misrepresented such in order to harass, annoy and attempt to provoke Plaintiff, a black man.

104.   None of the involved officers offered Plaintiff a mask in attempt to deescalate the situation.

105.   None of the officers involved were counseled or disciplined by any of Defendants for their actions on October 7, 2022.

106.   Defendants' officers were required to deescalate matters; handing Plaintiff a mask as requested would have been a simple and easy way to have deescalated this matter; however, Defendants' Caucasian security police officers have a pattern and practice of racial bias and discrimination and routinely use the

20

power, trust and authority provided by the state to discriminate, assault, harass and/or arrest black civilians without probable cause in violation of the constitutional rights of Guests.

107.   Defendants' officers involved in this incident have repeatedly violated the use of force protocols set by the Michigan Department of Police without consequence.

108.   After viewing surveillance footage, Defendants' Senior Use of Force Instructor, opined that unwarranted and excessive use of force was utilized by John Does 1-6 during Plaintiff's false arrest and imprisonment as a result of racial biases held by these Caucasian officers; these findings were brought immediately to the attention of Defendants' management personnel, including Gregory Jenkins, PA330 license holder and GM executive, and Defendant Payne, Security Operations Specialist/Security Director for RCS which has been owned and operated for all relevant time periods by Defendants RCMC, GM and/or G4S.

109.   The Defendants' Senior Use of Force Instructor investigated Plaintiff's arrest and incident and confirmed that Marriott Hotel did not have a mandatory mask requirement in effect at the time of Plaintiff's false arrest and imprisonment and that John Does 1-6 were informed of such policy.

110.   Neither Defendant Payne nor Defendant GM's executive Gregory Jenkins counseled, re-trained and/or issued disciplinary action to John Does #1-6 for their actions relative to Plaintiff.

111.   Defendant Payne did not launch any investigation into Defendants' actions or use of force against Plaintiff at any time.

112.   From 2017-present, several of Defendants' employees, hotel guests and civilians have filed internal complaints, EEOC Charges of Discrimination and lawsuits against Defendants alleging race discrimination, harassment, hostile work environment, racial profiling, assault, false imprisonment and use of unwarranted and excessive force by Defendants' Caucasian Security Police Officers; however, Defendants failed to investigate or take any action to address such resulting in an extremely dangerous environment.

113.   Defendants' employees and management personnel destroy company surveillance and video footage, arrest and incident reports, log books and other required documentation related to arrests in order to conceal their white employees' racial bias, use of unwarranted and excessive use of force, wrongful arrest, and other violations of black civilians' and hotel guests' constitutional rights.

114.  Defendants' management condoned and concealed acts of race discrimination, harassment, hostile work environment, racial profiling, assault, false imprisonment and use of unwarranted and excessive force committed by their

Caucasian Security Police Officers.

115.   Defendants G4S and RCMC have never disciplined any of the Caucasian officers that provide security services in the Renaissance Center building for any violation of their zero-tolerance anti-discrimination and/or use of force policies; despite many race based complaints and video evidence of such.

116.   Defendants' Senior Supervisors and Management personnel direct their security police officers to use any force needed to implement GM Ren Cen Rules of Conduct; such has repeatedly resulted in  wrongful arrest, assault and battery, false imprisonment, and excessive, unwarranted use of force against black civilians and hotel guests in violation of their constitutional rights.

117.   Defendants intentionally violated use of force protocols and state law, including but not limited to PA330, which should have resulted in the criminal prosecution of John Does #1-6.

118.   Defendants acts were intended and did result in physical injury, humiliation, emotional suffering and Post Traumatic Stress Disorder which continues to date.

119.   Plaintiff was a business invitee of Defendants GM, Marriott, RCMC and G4S.

**COUNT I- DEFENDANTS' ACTIONS CONSTITUTED UNREASONABLE SEARCH AND SEIZURE AND EXCESSIVE FORCE IN DEPRIVATION OF PLAINTIFF AND SIMILARLY SITUATED GUESTS' RIGHTS PROVIDED UNDER THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION PURSUANT TO 42 USC § 1983**

120.   Plaintiff reasserts and incorporates by reference paragraphs 1 through 119 of this complaint as though fully stated herein.

121.   Upon information and belief, all of the acts of the G4S and RCMC employees were carried out during the course and scope of their employment.

122.   Upon information and belief, the State of Michigan Department of State Police imbued Defendants G4S, GM, Marriott and/or RCMC and their employees with actual, apparent, or ostensible authority to act on its behalf and under color of state law in its name, to effectuate seizures and arrests of Guests on the premises of their employer. *MCL §764.15*

123.   At all times relevant to this matter, Defendants John Does #1-6 had the authority to arrest a person without a warrant as vested by state law. *MCL §338.1080*

124.   Defendants John Does #1-6, acting under the color of state law, did not have probable cause to arrest Plaintiff and, by arresting him without probable cause, violated his Fourth Amendment rights. *42 USC §1981; 42 USC §1983*

*125.*   Defendants' private security guards working at the Renaissance Center, acting under the color of state law, often searched, seized, and arrested black Guests without probable cause; thus, violating their Fourth Amendment rights without

regard. *42 USC §1981; 42 USC §1983*

*126.* Plaintiff and Guests have the constitutional right to be free from unreasonable search, seizures and arrests without probable cause under the Fourth Amendment.

*127.* The Fourth Amendment to the United States Constitution protects persons from being subjected to excessive force while being arrested, seized and/or stopped by police.

*128.* Defendants used excessive force in seizing, stopping and/or arresting the Plaintiff and other similarly situated Guests in violation of their Fourth Amendment rights. *42 USC §1981;42 USC §1983*

*129.* Defendants John Does #1-5 entitlement to detain, arrest, stop and/or seize Plaintiff was derived directly from their state licensure and certification under PA330.

130. Defendants John Does 1-5 never identified themselves as "licensed security police officers."

131. Defendant John Doe #6 identified the officers by fraudulently stating they were "the Police."

*132.* While acting under the color of state law, Defendants deprived Plaintiff, and other similarly situated Guests, of their constitutional Fourth Amendment rights to be free from unreasonable search, seizure, arrest and/or to be protected from

excessive force during an arrest, seizure or stop.

133.   All of the acts perpetrated against Plaintiff were carried out on behalf of G4S, RCMC, GM and Marriott, who expressly authorized or ratified the actions of Defendants John Does 1-6, Jenkins, Payne and the other employees.

134.   For all relevant time periods, Defendants and their employees were clothed with the authority of the State of Michigan as PA330 licensed Security Police Officers. *MCL §764.15*

135.   Defendants exercised power possessed by virtue of state law and made possible only because Defendants were clothed with the authority of state law.

136.   The State of Michigan provided a mantel of authority that enhanced the power of Defendants by delegating arrest authority to Defendants as security police officers.

137.   The Michigan Commission on Law Enforcement Standards ("MCOLES") is responsible for administering the functions of PA330 as it relates to private security police.

138.   Private Security Police are security guards that are employed by a business organization for the purpose of protecting the premises of that specific employer.

139.   Security guard agencies, employing security personnel who provide protection to other business entities are not eligible for the security police license or arrest authority granted in PA330.

140.   Licensed private security agencies, such as Defendants GM and RCMC, are empowered by the state to hire licensed private security police officers.

141.   Defendants John Does #1-6 exercise powers exclusively reserved to the state when the preform arrests while on the property of their employer.

142.   Defendants GM and RCMC licensed private security police officers are, and were for all relevant time periods, authorized with arrest authority by the state while on active duty, in full uniform and while on the premises of their employer.

143.   Defendants' Licensed Private Security Police Officers, such as John Does #1-6, were authorized by the state with arrest authority while on active duty, in full uniform on the Renaissance Center premises.

144.   Licensed Private Security Police Officers must meet certain requirements set by state law in order to be vested with arrest authority, including age, security and law enforcement experience, and are subject to a complete background investigation which is conducted by MCOLES, to ensure the absence of prohibitive criminal convictions.

*145.* Defendants are responsible for notifying and requesting the department of state police conduct a background check on all private security police officer applicants before hire and failed to do so. *MCL 338.1068(4)*

146. Defendants' Security Police Officers are certified and licensed by the department, MCOLES, the compliance arm of the Michigan Department of Police.

147. State law requires all Licensed Private Security Police Officers to be trained as required by the department, MCOLES, including training on criminal law and procedure, civil law and diversity, defensive tactics, non-violent intervention and annual maintenance curriculums which the employer must ensure is provided and completed.

148. Defendants RCMC, GM and G4S failed to provide required training, including annual training, to their Licensed Private Security Police Officers.

149. Defendants' Security Police Officers were required to attend and complete the PA330 Academy in conjunction with the Detroit Police Department and Michigan State Police before they can be certified as private security police officers.

150. Certified Security Police Officers, including Defendants John Does #1-6 and Jenkins attended the required training through MCOLES and The Detroit Police Department and were required to take mandatory continuing training classes through an approved employer, Defendants RCMC and/or GM, on an annual basis

as set forth by the Michigan Department of Police.

151.   Certified Security Police Officers are authorized and provided with arrest authority under Public Act 330 of 1968 through a licensee or license holder who is tied to an approved employer.

152.   Defendant Jenkins is a licensee and/or license holder for RCMC.

153.   One individual, Defendant Jenkins, was and continues to be at all relevant time periods, responsible for the licensure and all of the employees that have arrest authority under his license.

154.   MCOLES and the Michigan Department of State Police approved RCMC as an employer under PA330; such was in effect for all relevant time periods.

155.   Defendant Jenkins applied for and obtained a security license on behalf of Defendant RCMC.

156.   Defendant Jenkins was never an employee of RCMC.

157.   Defendant Jenkins never hired, controlled, trained, or supervised the private security police officers hired by RCMC and/or G4S to preform security services at the Renaissance Center.

158.   Defendants used excessive force when they stopped, seized and arrested Plaintiff.

159.   Defendant John Does #1-4 used deadly force when he stopped, seized and arrested Plaintiff.

160.   Defendants intentionally and viciously tackled Plaintiff, wrestled him to the ground, assaulted, shoved, pinned and body-slammed his head, face first into the ground without warning or provocation.

161.   Defendants did not verbally instruct or notify the Plaintiff that he was under arrest prior to their attack; Plaintiff was never instructed to simply place his hands behind his back in order to be handcuffed.

162.   Plaintiff never resisted arrest and never attempted to evade arrest by flight.

163.   Defendants forcefully threw Plaintiff into a glass door wall hard enough to crack the security glass doors after Plaintiff was restrained, in custody and was tightly surrounded by all six officers.

164.   The physical force applied by the Defendants' private security police officers was of such an extent as to lead to unnecessary injury to Plaintiff.

165.   Plaintiff did not pose any immediate threat to the safety of Defendants or others.

166.   Defendants' acts violated Plaintiff's Fourth Amendment right not to be subjected to excessive force.

167.   No reasonable officer would have used this amount of force in arresting Plaintiff under similar circumstances.

168.   Plaintiff is not a violent or dangerous man.

169.   Plaintiff did not commit any misdemeanor, infraction or felony.

170.   Plaintiff was merely talking to the officers about the mask requirement in place at the Marriott Hotel building at this was not his experience at check in or during the entire day and evening that he was a guest in the hotel.

171.   All of the acts committed upon Plaintiff were without consent, justification or reason.

69. Defendants GM, Marriott, G4S and RCMC are vicariously liable for the misconduct of their agents and employees.

172.   The conduct of Defendants was objectively unreasonable and was undertaken negligently, recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

173.   Plaintiff's injuries and the violations of his constitutional rights were directly and proximately caused by the policies and practices of Defendants, which are and were the moving force of the violations.

174.   When Defendant John Doe #6, Defendants' supervisor, identified himself, he did so by fraudulently stating "they [the arresting officers involved] were the 'police'."

175.   Defendants' supervisor had actual knowledge of John Doe #1-5's violation of Plaintiff's constitutional rights and either directed John Doe's 1-5 to tackle and accost Plaintiff or acquiesced in that violation by failing to stop the use

of force, by refusing to inform Plaintiff that a mask would be provided to him any minute in order to deescalate the situation, failing to stop his subordinates from wrongfully seizing and arresting Plaintiff without probable cause and/or failing to stop his subordinates from utilizing unwarranted and excessive force against someone who had not violated the law.

176. Defendants John Doe #5-6, Payne and Jenkins violated Plaintiffs' Fourth Amendment rights against unreasonable search and seizure, arrest, and/or excessive use of force during an arrest, seizure and/or stop because these Defendants failed to intervene to stop the violation.

177. Defendants John Does #1-6, Payne and Jenkins had a reasonable opportunity to intervene but intentionally and/or negligently failed to do so.

*178.* Defendants Payne and Jenkins are liable for the conduct of the security police officers based on RCS' custom and practice of permitting the use of unwarranted, excessive and/or deadly force by white RCS Officers against black Guests, without show of resistance or other threat; permitting the false and unwarranted arrests of black Guests, including juveniles, without contacting DPD upon arrest, as required by law, without maintaining an arrest, incident or AIMs report, or log book as required by law and/or destroying records and/or falsifying reports in order to conceal the discriminatory motivations and racial biases of their white officers; and failing to train, supervise, counsel, re-train, and/or issue

corrective action to officers who violated Guests constitutional rights from 2019-present.

*179.*   Defendants were aware prior to October 2020 that John Doe #1 had a history of harassing, wrongfully arresting and seizing a black Guest without probable cause in violation of Guest's Fourth Amendment constitutional rights to be free of unreasonable search and seizure and excessive force; yet Defendants failed to make corrective measures to ensure the safety and protection of their Guests.

180.   On June 2018 when the Guest refused to go into her hotel room as he directed; this Guest did not violate any law or ordinance but did not comply with John Doe #1's directive. Thus, to punish her, he and another uncertified, Caucasian Director of RCS arrested and detained the Guest and refused to permit her to use the restroom for hours, resulting in her having to urinate and vomit on herself and sit in the dirty clothing for over six hours. Defendants released her without criminal charges since she had not violated the law. Defendants' management did not counsel, discipline or re-train the white officers involved in this incident.

181.   Defendants GM, G4S and RCMC received several complaints in December 2019 that Caucasian Officer John Doe #1 and another Caucasian Defendants' management employee was involved in a racially motivated incident where wrongfully arrested and caused physical harm and injury to an unidentified black female Guest and visitor to the Renaissance Center without probable cause,

33

display of resistance or violation of law. Defendant John Doe #1 falsified the arrest report to include a false narrative that "supported" his arrest and racially motivated use of unwarranted and excessive force in violation of the Guests Fourth Amendment rights; yet Defendants took no action to investigate or address this complaint or to ensure a safe environment for future Guests.

182.   Defendants GM, G4S and RCMC received several complaints in March 2019 that Caucasian Officer John Doe #4 was involved in a racially motivated incident where he viciously attacked, wrestled, pinned and utilized OC Spray on an unidentified black Guest of the Renaissance Center after he was asked to leave the premises and was complying with the Officer's verbal directives without any display of resistance; yet Defendants took no action to investigate or address this complaint.

183.   On approximately July 20, 2019, Defendants GM, G4S and RCMC received several complaints that Caucasian Officer John Doe #4 was involved in a racially motivated incident in the Valet area of the Detroit Marriott Renaissance Center Hotel where he viciously attacked, wrestled, pinned and utilized OC Spray on an unidentified black male Guest after he was asked to leave the premises and was complying with the Officer's verbal directives without any display of resistance; yet Defendants took no action to investigate or address this complaint. Defendant John Doe #4 falsified the arrest report to include a false narrative that "supported" his arrest, use of OC Spray and racially motivated use of unwarranted and excessive

force in violation of the Guests Fourth Amendment rights; yet Defendants took no action to investigate or address this complaint or to ensure a safe environment for future Guests.

184.    Again on approximately July 28, 2019, Defendants GM, G4S and RCMC received complaints that Caucasian Officer John Doe #4 was involved in a racially motivated incident where he chased, provoked, assaulted and utilized OC Spray on a black male Guest who was trying to leave the Renaissance Center premises. This Guest complied with the Officer's verbal directives without any display of resistance or commission of any crime, in violation of Guest's Fourth Amendment rights. Defendant John Doe #4 falsified the arrest report to include a false narrative that "supported" his arrest, use of OC Spray and racially motivated use of unwarranted and excessive force in violation of the Guests Fourth Amendment rights; yet Defendants took no action to investigate or address this complaint or to ensure a safe environment for future Guests.

185.    Defendant John Doe #4 was not disciplined or counseled by Defendants G4S, GM, RCMC, Jenkins, or Payne for his racially motivated use of unwarranted and excessive use of force against Guests.

186.    Defendant Payne was notified prior to October 2020 that a white private security police employee punched, kicked and utilized OC Spray on a black, mentally-ill, homeless person on the Renaissance Center premises without any

cause, provocation, threat, or show of resistance and then told her to "get the hellout of here" while laughing and bragging about how management does not care what he does to black civilians. No action was taken in response to this report of an officer's deprivation of Guest's Fourth Amendment rights to be free of excessive force.

*187.* Defendants are liable for the wrongful conduct of their employees, including but not limited to John Does #1-6 under the theory of vicarious liability, including but not limited to the doctrine of respondeat superior

*188.* Defendant John Doe #4, willfully made a false report to his employer relative to Plaintiff's arrest and seizure and is thus guilty of a misdemeanor. *MCL §338.1070*

189. Defendants Payne and Jenkins' failure to follow the Use of Force Continuum and Defendants' Use of Force policies and training requirements set by the State of Michigan created an unreasonable risk that Guests' constitutional rights would be violated and that serious injury and/or death was imminent if such violations were permitted to continue without consequence.

190. John Doe #1-6's use of unwarranted, excessive, and deadly force; wrongful arrest; assault; search and seizure of Plaintiff resulted from Defendants Payne and Jenkin's failure to supervise, train, and implement Defendants' policies, protocols and procedures, including but not limited to the use of force policies, use of force continuum, anti-discrimination policies and refusal to report their egregious

actions to DPD for criminal consequences as mandated by company policy and state law.

191.   On several occasions since 2017, Defendants' management was made aware of their security officers' acts of brutality, excessive use of force, racial profiling, false arrests and other abuses of power against African American civilians as well as falsification of police reports intended to conceal such acts, a misdemeanor offense *MCL §338.1070*; yet Defendants took no action to end such conduct at the Renaissance Center and did not arrest or report those employees responsible for violating the law.

192.   Defendants, by and through their management personnel, concealed, destroyed and falsified documents, reports and records in attempt to conceal the racially discriminatory acts of their Caucasian Officers perpetrated against Plaintiff and other similarly situated Guests.

193.   Defendants, by and through their management personnel, collude as to ways they can retaliate against Guests who complain of race discrimination in their workplace and routinely put such plans into action using their authority and power authorized by state law to wrongfully arrest, detain and/or seize Guests without probable cause or legal rationale, in violation of the Fourth Amendment rights of Guests.

194.    All of the acts committed by Defendants' John Does #1-6, Jenkins and Payne, collectively, occurred in the course and scope of their employment and/or agency with Marriott, RCMC,  G4S, and/or GM; thus, Defendants Marriott, RCMC, G4S and GM are vicariously liable for all tortious acts and omissions under the doctrine of respondeat superior.

195.    Defendants have no qualified immunity as private actors.

*196.*    Defendants unlawfully, maliciously, recklessly, and indifferently, alone and in concert, conspired to commit acts or omissions, under color of law but contrary to law, to deprive Brown and similarly situated Guests of their rights and privileges secured under the Constitution and laws of the United States, including but not limited to the right to be free from an unreasonable search or seizure of his person, as guaranteed by Amendments IV and XIV of the United States Constitution. *42 U.S.C. §1981 and §1983*

197.    **Plaintiff seeks declaratory and injunctive relief, nominal, compensatory and punitive damages against all Defendants.**

198.    As a direct and proximate result of Defendants' actions and/or misconduct, Plaintiff and similarly situated Guests, suffered injury and damages of a physical and nonphysical nature for which they seek redress.

199.   As a direct and proximate result of said acts of Defendants, by and through its agents and employees, Plaintiff and similarly situated individuals have suffered and will continue to suffer loss of dignity, anxiety, pain and suffering, and enjoyment of life, extreme mental and emotional distress, severe nervousness, mental anguish, embarrassment and humiliation.

200.   Plaintiff and similarly situated individuals pray for a judgment of compensatory, liquidated, punitive and exemplary damages which are fair and just in their favor against the Defendants resulting from Defendants' actions, along with an award of costs and attorney fees so wrongfully incurred.

## COUNT II- DEFEDANTS' FALSE ARREST AND DEPRIVATION OF PLAINTIFF'S, AND SIMILARLY SITUATED GUESTS', RIGHTS UNDER THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION PURSUANT TO 42 USC § 1983

201.   Plaintiff reasserts and incorporates by reference paragraphs 1 through 200 of this complaint as though fully stated herein.

202.   Upon information and belief, all of the acts of the G4S and RCMC employees were carried out during the course and scope of their employment.

203.   Upon information and belief, Marriott imbued G4S, GM and RCMC and their employees with actual, apparent, or ostensible authority to act on its behalf and under color of law in its name, to effectuate evictions or arrests of guests and/or potential guests on its premises.

39

204.   All of the acts perpetrated against Plaintiff were carried out on behalf of G4S, RCMC, GM and MARRIOTT, who expressly authorized or ratified the actions of Defendants John Does #1-6, Jenkins, Payne and other PA330 Officers working at the Renaissance Center.

205.   Defendants GM, G4S, RCMC and Marriott are vicariously liable for the false arrests of their employees, contractors and agents.

206.   Defendants John Does #1-5 restricted Plaintiff's freedom of movement which intruded severely on Plaintiff's interests protected under the Fourth Amendment of the Constitution.

207.   Defendants John Does #1-5 entitlement to detain Plaintiff was derived directly from their state licensure and certification under PA330.

208.   Defendants G4S, RCMC, GM, John Does 1-6 and Marriott directly, and by the actions of their employees and/or agents, without justification or reason, unlawfully deprived Plaintiff of his freedom of movement and personal liberty, by physically restraining him, wrestling him to the ground, shackled in handcuffs and caged in a locked basement detention room for more than five hours while still handcuffed and prohibited him from using a toilet during that time.

209.   Defendants John Does 1-6 did not have the lawful right or authority to lawfully arrest, handcuff or imprison Plaintiff.

210.   Plaintiff did not commit any crime warranting arrest.

211.   Plaintiff has no criminal history.

212.   Defendants used an extraordinary amount of excessive force under the circumstances.

213.   Plaintiff was conscious of his confinement and restraint which were unprivileged and occurred without probable cause or other legal basis.

214.   As a direct and proximate result of the unlawful conduct of the Defendants, directly and vicariously, Plaintiff suffered injury to his head and brain, multiple cuts, bruises and abrasions to his neck, arms, hands, head and wrist, and he suffered and continues to suffer fear, indignation, pain, suffering, and mental anguish, injury to his reputation, embarrassment, humiliation, mortification, outrage, shame, loss of liberty and constitutional rights.

215.   As a direct and proximate result of said acts of Defendants, by and through their agents, employees and assigns, Plaintiff and similarly situated Guests, suffered injury and damages of a physical and nonphysical nature for which they seek redress including suffering loss of dignity, pain and suffering, and enjoyment of life, extreme mental and emotional distress, severe nervousness, mental anguish, embarrassment and humiliation.

216.   Plaintiff and similarly situated individuals pray for a judgment of compensatory, liquidated, punitive or exemplary damages which are fair and just against the Defendants, along with an award of costs and attorney fees.

**COUNT III- DEFENDANTS ACTED IN CONCERT TO DEPRIVE PLAINTIFF OF RIGHTS UNDER 42 USC § 1983 AND THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

217. Plaintiff reasserts and incorporates by reference paragraphs 1 through 216 of this complaint as though fully stated herein.

218. At all relevant times Defendants engaged in concerted activities as described herein by express or implied agreement.

219. Plaintiff and Guests may not be able to identify all such activities of the Defendants due to the generic similarity of such activities as promoted by Defendants and due to their attempts to conceal and destroy relevant documents and evidence which they were required to maintain under state law.

220. Due to the concert of action among all of the Defendants, each is liable to Plaintiff and similarly situated Guests even if there was no direct relation to the activity conducted by that particular Defendant.

221. As a direct and proximate result of Defendants' actions in concert, Plaintiff and similarly situated Guests, suffered severe injury and damages of a physical and nonphysical nature for which they seek redress.

222. Plaintiff and similarly situated individuals pray for a judgment of compensatory, liquidated, punitive and exemplary damages which are fair and just in their favor against the Defendants resulting from Defendants' concert of actions, along with an award of costs and attorney fees so wrongfully incurred.

**COUNT IV- DEFENDANTS' INTENTIONAL RACE DISCRIMINATION OF PLAINTIFF AND SIMILARLY SITUATED GUESTS IN VIOLATION OF 42 USC § 1981**

223.   Plaintiff reasserts and incorporates by reference paragraphs 1 through 222 of this complaint as though fully stated herein.

*224.*   Federal Civil Rights Laws prohibits race discrimination in the making and enforcement of contracts. *42 USC § 1981*

225.   Plaintiff contracted with Defendants to be a Guest at the Marriott Renaissance Center Hotel located on the Renaissance Center premises from October 6, 2020 through October 7, 2020; thus the parties had a contractual relationship for purposes of *42 USC §1981*.

226.   Defendants Marriott, G4S, GM and RCMC, by and through their employees, contractors, supervisory personnel, agents and assigns, intentionally discriminated against Plaintiff based on his race.

227.   Defendants' intentional race discrimination resulted in a contractual injury to Plaintiff.

228.   Defendants John Does #1-6 prohibited Plaintiff from entering the premises of the Renaissance Center during his paid stay in the Detroit Marriott Renaissance Center Hotel due to a manifested mask requirement which was not in place at the time of the incident; thus interfering with Plaintiff's contractual rights.

229.    Plaintiff was prohibited from staying in his paid hotel room for the night that he paid to stay there due to Defendants' intentional race discrimination which included but is not limited to: wrongful detainment and arrest, racial profiling, unwarranted and excessive force in violation of Plaintiff's constitutional Fourth Amendment and contractual rights.

*230.*    Defendants intentionally discriminated against Plaintiff based on his race and this discrimination resulted in a contractual injury in violation of *42 U.S.C. § 1981(b)*

*231.*    Defendants have likewise prohibited other similarly situated Guests from entering their premises based on intentional race discrimination and biases and resulting in breaches of contractual rights under *42 U.S.C. § 1981(b)*

232.    **Defendants' actions** prevented Plaintiff's enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship between him and Defendants' Marriott.

233.    Defendants had a duty of care to the Detroit Marriott Renaissance Center Hotel Guests, including Plaintiff, under an implied contract; Defendants are liable to Plaintiff and/or similarly situated Guests when they fail to provide a safe premises.

234.    Defendants maliciously and wantonly disregarded Plaintiff's constitutional rights.

235.   Defendants' actions constituted intentional and reprehensible misconduct based on race discrimination which was not addressed by Defendants' management personnel.

236.   Defendants' actions were clearly based on Plaintiff, and similarly situated black Guests' race as evidenced by the historical violations and complaints of racial bias, discrimination, and motivation of white RCS officers.

237.   Defendants were aware John Does #1, 3 and 5 were former police officers with racial biases; yet hired them into armed CPO positions of power, trust and authority which permitted them to be a catalyst to promote race discrimination and harassment and create the race hostile work environment that permeates the Renaissance Center security department.

238.   Defendants Payne and Jenkins' were deliberately indifferent to these risks.

239.   John Doe #1, a white security police officer that works for Defendants GM, RCMC and G4S, has made racial epithets at RCS, including but not limited to referring to black co-workers and Guests of the Renaissance Center as "Niggers" and colluding with Defendants' Officer and Union President, John Doe #5, as to "how to get rid of the niggers," and stating "we need to get this nigger out of here," referring to his black co-worker who filed race discrimination against him and voiced concerns of white officers' use of excessive force against black Guests.

240.   Defendants GM, G4S and RCMC received several complaints that Caucasian Officer John Doe #3 routinely made, entertained and participated in racially offensive and discriminatory remarks evidencing racial biases such as "*What do you have to do to stop a black guy from raping a white girl, throw them a basketball*" and referencing black co-workers and Guests as *"Niggers"* and "*dogs in heat"* and telling white officers they need to be "protected" from black co-workers.

241.   Defendants GM, G4S and RCMC received several complaints that Caucasian Officer John Doe #5 routinely made racially offensive and discriminatory remarks evidencing racial biases such as "*What do you have to do to stop a black guy from raping a white girl, throw them a basketball*" and referencing black co-workers and Guests as "*Niggers," "dogs in heat,*" *the Nigger is using their black card again,"* asking a fellow black Officer *"what would you do if I shot your black ass?"* and telling white officers they need to be "protected" from their black co-workers; yet Defendants' management never addressed such complaints.

242.   On approximately May 25, 2019, Defendants GM, G4S and RCMC received complaints that Caucasian Officers John Doe #2 and #5 were involved in a racially motivated incident where they tripped a handcuffed, black Detroit Marriott Renaissance Center Hotel Guest with such excessive force that the Guest started experiencing seizures and issues breathing. This Guest complied with the Officer's verbal directives without any display of resistance or commission of any crime;

Defendants actions were in violation of Guest's Fourth Amendment rights. Defendants took no action to investigate or address this complaint or to ensure a safe environment for future Guests.

243.    On approximately January 2021, Defendants GM, G4S and RCMC received an eye-witness complaint that Caucasian Officer John Doe #5 was involved in a racially motivated incident and use of excessive force whereupon he called the swat team on four juvenile Guests who were playing outside the Renaissance Center and falsely reported the Guests were four "men with weapons." These Guests were never asked to leave the premises by anyone; yet the swat team rushed in with weapons based on John Doe #5's report, scaring, traumatizing and seizing Guests without probable cause or rationale. Defendant John Doe #5's actions were reckless, dangerous and constituted unwarranted and excessive force in violation of Guest's Fourth Amendment rights. Defendants took no action ensure a safe environment for future Guests.

244.    Defendants' officers failed to deescalate situations involving the arrests of Guests, in violation of Defendants' company policies without consequence.

245.    On approximately April 1, 2021, Defendants GM, G4S and RCMC received complaints that Caucasian Officers John Doe #5 was involved in a racially motivated incident whereupon he chased and attempted to hit black Juvenile Guests with his work vehicle while driving recklessly, backwards in the Defendants'

parking lot at excessive speeds because they were playing with their scooters in the lot. Defendant John Doe #5 was laughing and told his upset co-worker, "that will teach them to play here." Defendant John Doe #5 never issued verbal directives to the unidentified Guests and did not ask them to leave the premises before chasing and almost hitting them with the Defendants' vehicle. Defendant John Doe #5's actions were reckless, dangerous and constituted unwarranted and excessive force in violation of Guest's Fourth Amendment rights. Defendants took no action ensure a safe environment for future Guests.

246.  Defendants GM, G4S and RCMC received several complaints in January 2019 that Caucasian Officer John Does #4 and Supervisor John Doe #6 were involved in a racially motivated incident where a black male prisoner, who was restrained and handcuffed to a bench inside of a detention cell and posed no threat to officers, was choked by a white officer who also administered painful Hyperglosall pressure points on the prisoner in order to obtain his compliance to take a mugshot which could have been administered remotely; Supervisor John Doe #6 and Officer John Doe #4 both had the opportunity to intervene in this racially motivated, unwarranted and excessive use of deadly force but participated instead. Both were later promoted by Defendants.

247. Despite complaints to Defendants' management detailing John Doe #1-6's racial discrimination, motivations and biases, Defendants' management failed to conduct any investigation or take any remedial action to address this serious violation of company policy and intentional disregard for violating the constitutional rights of others based on race while holding a position of power thus endangering future Guests.

248. No Officers were disciplined or counseled by Defendants G4S, GM, RCMC, Jenkins, or Payne for their racially motivated use of unwarranted and excessive use of force against unidentified Guests at the Renaissance Center.

249. Historically in the United States horrific acts of violence were committed against the African Americans during the times of slavery. One such horror was referred to as "buck breaking;" which was when the strongest African American male in a given community was forced to bend over and touch his toes while Caucasian slave owners raped and/or sexually violated him in attempt to show their power and superiority and instill fear throughout the slave community.

250. In December 2021, John Doe #2, Defendants' Caucasian Officer familiar with "buck breaking," repeatedly cornered a black co-worker at work and asked him to preform lewd and degrading acts, alluding to the historical atrocities committed against African Americans in order to discriminate, harass, intimidate, provoke and instill fear. Defendants' management personnel were informed of John

Doe #1's actions and failed to investigate or otherwise address this flagrant display of racial bias and discrimination.

251.   Defendants RCMC and G4S were aware that John Doe #2 was previously terminated from his prior employment for Fourth Amendment and Due Process Violations and for criminal activity; yet they still made the decision to hire him as a security officer at the Renaissance Center in Detroit, Michigan.

252.   Defendants RCMC and G4S were aware that John Doe #3 was previously terminated from his prior employment for violating the constitution rights of others, including violations of their Fourth Amendment and Due Process rights; yet they still made the decision to hire him as a security officer at the Renaissance Center in Detroit Michigan.

253.   Despite Plaintiff's and other Guests' and co-worker complaints against Defendants' white officers for acts of race discrimination, racial epithets, bias, wrongful arrest, racial profiling, harassment, assault and use of excessive and unwarranted force against black individuals, including but not limited to John Does #1-4 who all received promotions of their employment despite their intentional disregard for violating the constitutional rights of others based on their race while holding a position of power.

254.   John Doe #3 became the Union Vice President, a position of power at RCS; despite Plaintiff's, other Guests' and co-workers' complaints against him for acts of race discrimination, bias, harassment, creation of a race hostile work environment at RCS, and intentional disregard for violating the constitutional rights of others based on their race while holding a position of power, trust and authority.

255.   John Doe #4 became the Union President, a position of power at RCS; despite Plaintiff's, other Guests' and co-workers' complaints against him for acts of race discrimination, racial epithets, bias, wrongful arrest, racial profiling, harassment, assault and use of excessive and unwarranted force against black individuals and intentional disregard for violating the constitutional rights of others based on their race while holding a position of power, trust and authority.

256.   Defendants RCMC and G4S were aware that John Doe #5 was previously terminated from his prior employment for theft; yet they still made the decision to hire him as a security officer at the Renaissance Center in Detroit Michigan.

257.   Defendants GM, RCMC and G4S received notice that Defendant John Doe #5 showed other private security police officers at the Renaissance Center a photo of the decapitated head of a black male accident victim and stated he and his friends passed around this man's head and made racial slurs and jokes about it; yet Defendants took no action to discipline or ban this racially biased Officer from

Defendants' premises.

258.  John Doe #5 was the Union President, a position of power, trust and authority at RCS; despite Plaintiff's, other Guests' and co-workers' complaints against him for acts of race discrimination, racial epithets, bias, wrongful arrest, racial profiling, harassment, assault and use of excessive and unwarranted force against black individuals, creation of a race hostile work environment at RCS, and intentional disregard for violating the constitutional rights of others based on their race.

259.  Acts of unwarranted/excessive use of force against black civilians by white officers were condoned and complaints were ignored by Defendants' management, including Defendants Jenkins and Payne.

260.  Several Security Police Officers at the Renaissance Center left their employment due to Defendants' managements refusal to address the racially hostile work environment and pattern of using unwarranted and excessive force against black Guests committed by several of the white officers, including but not limited to Defendants John Does #1-6; these officers were concerned and feared for the safety and life of black Guests vising to the Renaissance Center.

261.  As a direct and proximate result of said acts of Defendants, by and through its agents and employees, Plaintiff and similarly situated individuals have suffered and will continue to suffer loss of dignity, pain and suffering, and

enjoyment of life, extreme mental and emotional distress, severe nervousness, mental anguish, embarrassment and humiliation.

262.   Plaintiff and similarly situated individuals pray for a judgment of compensatory, liquidated, punitive and exemplary damages which are fair and just in their favor against the Defendants resulting from Defendants' actions, along with an award of costs and attorney fees so wrongfully incurred.

## COUNT V – INTENTIONAL INFLICTION
## OF EMOTIONAL DISTRESS

263.   Plaintiff reasserts and incorporates by reference paragraphs 1 through 262 of this complaint as though fully stated herein.

264.   At all times relevant herein, members of Defendants' Marriott, GM, G4S and RCMC's security personnel were acting under the direction and control of and pursuant to the rules, regulations policies and procedures of Defendants as required under state law.

265.   Defendants intentionally caused severe emotional distress to Plaintiff and similarly situated Guests by their willful, wanton, extremely egregious and reckless and violent actions and indifferent conduct and breached their duty of care, including but not limited to engaging in and/or allowing their employees and agents to engage in a senseless and unwarranted physical attack upon Plaintiff and other Guests which directly led to injury.

266.   Defendants intentionally caused severe emotional distress when Defendants detained, seized, and confined Plaintiff in an overheated basement detention cell without permitting him to use the toilet for over five hours.

267.   Defendants withheld necessary medical treatment from Plaintiff following their brutal attack.

268.   Defendants' actions were done with the purpose of inflicting severe emotional distress and fear and punishment on Plaintiff who had complained that they were discriminating against him based on his race.

269.   At all times relevant herein, Defendants actions were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.

270.   Defendants' actions, directly and vicariously, were outrageous, knowing, intentional, willful and done with malicious intent and/or reckless disregard of the probability of causing Plaintiff and similarly situated Guests physical and emotional distress of a very serious kind.

271.   Alternatively, Defendants' actions were outrageous, knowing, and negligent and committed without regard for the safety and wellbeing of Plaintiff.

272.   Defendants had the duty of care not to inflict emotional distress on Plaintiff, and similarly situated Guests, and they breached that duty.

273.    Defendants were aware that many of their employees that held positions of power and authority as private security police officers harbored serious racial biases; yet Defendants maintained their employment and/or security services  and permitted them to continue to have arrest authority without warrants which permits them to be a catalyst to promote race discrimination, harassment and resulted in the creation of a severely race hostile work environment that permeates the Renaissance Center and poses a serious danger to Guests.

274.    As a direct and proximate result of Defendants', by and through their agents and employees, extremely reckless and indifferent conduct, the Plaintiff, and similarly situated individuals, have suffered and will continue to suffer loss of dignity, pain and suffering, extreme mental and emotional distress, severe nervousness, mental anguish, embarrassment, anxiety and humiliation.

275.    Plaintiff's injuries are a direct result of Defendants' actions.

276.    Plaintiff and similarly situated individuals pray for a judgment of compensatory, liquidated, punitive, or in the alternative, exemplary damages which are fair and just in their favor against the Defendants resulting from Defendants' actions, along with an award of costs and attorney fees so wrongfully incurred.

## COUNT VI – NEGLIGENCE AND NEGLIGENT HIRING, TRAINING AND SUPERVISION OF OFFICERS THAT PREFORM SECURITY SERVICES AT THE RENAISSANCE CENTER AGAINST ALL DEFENDANTS

277.   Plaintiff reasserts and incorporates by reference paragraphs 1 through 276 of this complaint as though fully stated herein.

278.   At all relevant times, Defendants, directly and vicariously, and their employees and agents acting on their behalf, had a duty to use reasonable care to prevent harm to Plaintiff and similarly situated guests of the Detroit Marriott Renaissance Center Hotel and visitors to the Renaissance Center building in Detroit, Michigan.

279.   Defendants had the following duties to Plaintiff and other similarly situated black Marriott Hotel Renaissance Center hotel guests and visitors to the Renaissance Center building in Detroit, Michigan (collectively "Guests"):

a) To avoid assault, battery, wrongful imprisonment, wrongful arrest, and/or other harm or injury to Guests on their property; and

b) to intervene to stop any assault, battery, use of excessive or unwarranted force, wrongful arrest or seizure of Guests on their property;

c) to avoid putting Guests in harms way by ensuring all security officers providing security services in the Renaissance Center building are without racial biases or known history of racial profiling, excessive or unwarranted use of force, discrimination, assault and/or false arrest of Guests; and

d) to ensure that security officers providing security services on Defendants' premises are properly vetted, trained, licensed, certified and supervised to ensure the safety and protection of their Guests; and

e) to immediately deescalate any potential confrontations with Guests in order to avoid using any force against Guests; and

f) to take appropriate measures to ensure no Guest's constitutional rights are violated on their property; and

g) to immediately contact the local Detroit Police Department upon belief that a crime has occurred on Defendants' premises or upon arrest of any Guest; and

h) to immediately contact the Detroit Police Department upon a Guest's reported concern for his/her physical safety; and

i) to ensure their premises is free of racial bias, harassment and discrimination; and;

j) to ensure their workplace rules are enforced in a civil and professional manner;

k) to provide medical services to Plaintiffs and Guests that were injured on their premises; and

l) to investigate and address known complaints of racial discrimination, excessive or unwarranted force, false arrest, or harassment against their employees, contractors and assigns.

280.   Defendants did not inform the Detroit Police Department or otherwise report to any entity that any force was used in Plaintiff's arrest.

281.   Defendants failed to notify law enforcement of a suspected crime. *MCL §338.1067(a)*

282.   Defendant had the responsibility and duty to contact local law enforcement agency upon arrest of Plaintiff or Guest pursuant to Defendants' company policies and state law and failed to do so.

283.   Defendants had the responsibility and duty to Plaintiff and Guests to investigate Plaintiff's arrest incident as deadly force was utilized by their security police officers and failed to do so.

284.   Defendants had the responsibility and duty to Plaintiff and Guests to ensure their private security police officers were qualified and obtain a background check on all applicants before hire and failed to do so. *MCL §338.1068*

285.   Defendants had the responsibility and duty to provide medical services to Plaintiff due to his injuries and failed to do so.

286.   Several employees have complained that a racially hostile work environment exists at RCS; these complaints are evidence of arresting officers' racial bias as well as Defendants' negligence in refusing to previously address such.

287.   Defendants G4S, RCMC, Marriott and GM acted in contravention of the duty of care to Plaintiff and other similarly situated Guests by negligently, carelessly, and recklessly failing to properly train, supervise, control, direct and monitor their security personnel while carrying out their duties and responsibilities.

288.   Defendants owed a duty of care to Plaintiff and similarly situated Guests and negligently breached such duties.

289.   Defendant Marriott was on notice prior to the October 7, 2020 incident that RCMC and G4S, security companies owned, operated and/or hired by Defendant GM, owner of the Renaissance Center, consisted of racially biased Officers that had a history of harming, assaulting, wrongfully arresting, seizing and using excessing force on their black Guests; yet did nothing to ensure the safety of future Guests to the Detroit Marriott Renaissance Center Hotel, including the Plaintiff.

290.   Defendant Marriott knew or should have known that racially biased Officers that had a history of harming, assaulting, wrongfully arresting, seizing and using excessing force on their black Guests, including but not limited to John Does #1-6 were never disciplined, counseled or re-trained following such incidents and remained in their positions of power and arrest authority at the Renaissance Center which resulted in a serious risk of harm to their Guests.

291.   Defendants Payne and Jenkins' negligently and/or intentionally refused to investigate or address complaints filed by Defendants RCMC, GM, G4S' Senior Use of Force Instructor, employees and Guests from 2017 through present relative to discrimination, racial biases, harassment, violence and use of unwarranted and excessive force against black Guests at the Renaissance Center posing a serious risk of harm to future Guests.

292.   Defendants breached all their duties in every regard.

293.   **Defendants Marriott, G4S, GM and G4S' Caucasian officers were previously sued by Marriot Hotel guests and visitors to the Renaissance Center building in Detroit, Michigan in 2016 and again in 2018 alleging racial biases; racial profiling; assault and battery; false arrest; false imprisonment; negligence; negligent training, hire and supervision of Defendants' Officers; and intentional infliction of emotional distress; thus Defendants were on notice of this volatile and dangerous racially charged environment *before* Plaintiff was injured by**

Defendants and yet took no action to ensure the safety of future guests and visitors to the Renaissance Center in Detroit, Michigan, such as Plaintiff and other similarly situated individuals.

294. As a direct and proximate result of Defendants' breach of their respective duties, and/or negligence and negligent hiring, training and supervision of their PA330 officers, Plaintiff and similarly situated Guests, suffered injury and damages of a physical and nonphysical nature for which they seek redress.

295. As a direct and proximate result of said acts of Defendants, by and through its agents and employees, Plaintiff and similarly situated individuals have suffered and will continue to suffer loss of dignity, pain and suffering, anxiety, shock, emotional trauma, loss of enjoyment of life, extreme mental and emotional distress, severe nervousness, mental anguish, embarrassment and humiliation.

296. Defendants' breach of duties of care was a substantial factor in causing harm and injury to the Plaintiff and other similarly situated Guests.

297. Plaintiff and similarly situated individuals pray for a judgment of compensatory, liquidated, punitive and exemplary damages which are fair and just in their favor against the Defendants resulting from Defendants' actions, along with an award of costs and attorney fees so wrongfully incurred.

WHEREFORE, the Plaintiff respectfully requests relief as follows:

a) A declaration that Defendants' policies and practices violate the Constitution;

b) Nominal damages for each violation of Plaintiff's rights by the Defendants;

c) A preliminary and permanent injunction preventing Defendants from continuing to violate the Constitution and providing other equitable relief deemed warranted by this Court;

d) Compensatory damages in an amount to be determined at trial;

e) Punitive damages against Defendants in an amount to be determined at trial;

f) Costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988, and under other applicable law;

g) Any other such relief that this Court deems just and equitable.

Respectfully Submitted,

*/s/ Danielle Safran*
Danielle Safran
30300 Northwestern Hwy., Suite 337
Farmington Hills, MI 48334
Dated: January 11, 2023        (248) 705-6400

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEMARKO BROWN, on behalf of himself and
other similarly situated individuals,

              Plaintiffs,

v.

                                  Case No:

G4S SECURE SOLUTIONS (USA) INC.,
RENAISSANCE CENTER MANAGEMENT
COMPANY, GENERAL MOTORS, LLC. f/k/a
GENERAL MOTORS COMPANY, MARRIOT
INTERNATIONAL, INC./DETROIT HOTEL
SERVICES, LLC, d/b/a DETROIT MARRIOTT
RENAISSANCE CENTER, GREGORY JENKINS,
LARRY PAYNE, JOHN DOES #1, 2, 3, 4, 5 AND 6

              Jointly and severally,

              Defendants.

                                  HON.

---

## <u>**JURY DEMAND**</u>

    NOW COMES Plaintiff, Demarko Brown, by and through their attorneys,

The Sigler Law Firm, PLC., and hereby requests a trial by jury.

                    Respectfully Submitted,


                    <u>*/s/ Danielle Safran*</u>
                    Danielle Safran
                    30300 Northwestern Hwy., Suite 337
                    Farmington Hills, MI 48334
Dated: January 11, 2023       (248) 705-6400